# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| INFRASOURCE SERVICES, LLC,<br><br>     Appellant,<br><br>   v.<br><br>DEPARTMENT OF LABOR AND INDUSTRIES,<br><br>     Respondent. | No. 83948-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Infrasource Services, LLC (Infrasource) was cited by the Department of Labor and Industries (Department) for violating the Washington Industrial Safety and Health Act of 1973 (WISHA). Before the Board of Industrial Appeals (Board), Infrasource argued the violation resulted from unpreventable employee misconduct. The Board upheld the WISHA violation. Infrasource appeals and asserts the Board erred in its conclusion that Infrasource failed to prove effective enforcement of its safety program in practice, not just in theory. We affirm the trial court's order affirming the Board's decision and order.[1]

---

[1] Infrasource also assigned error to the Board's finding that Infrasource knew or by the exercise of reasonable diligence should have known that Neil Mersman was operating the backhoe on May 10, 2019, while not using seatbelts. But Infrasource's brief fails to argue this assignment. We will not consider an argument that is not adequately briefed or argued. Cowiche Canyon Conservancy v. Bosley, 118 Wn. 2d 801, 809, 828 P.2d 549 (1992).

I.

Infrasource installs residential and commercial gas services for Puget Sound Energy. In spring 2019, Infrasource had about 400 employees. On May 10, 2019, Neil Mersman was working for Infrasource at a jobsite in West Seattle. Mersman was operating a backhoe.

Department Compliance Safety and Health Officer Doug Fordice was performing a drive-by inspection when he observed Mersman driving a backhoe down Delridge Way SW—a busy road in West Seattle—without wearing his seatbelt. Fordice stopped, took photos, and approached Mersman. Fordice asked Mersman why he was not wearing his seatbelt and Mersman responded that he just forgot.

At the time, the foreperson, Nate Larson, was not at the jobsite. Larson was with Infrasource's Kent base superintendent, Alex Bartells, at a different jobsite. When they learned that Fordice was on-site and had found a violation, Bartells and Larson went to the West Seattle jobsite.

The Department issued a citation and notice of assessment for a serious violation of WAC 296-155-615(1)(b) (failure to wear a seat belt). Infrasource appealed the violation. After an informal conference, the Department issued a corrective notice of redetermination. The Department affirmed the serious violation but reduced the penalty from $6,000 to $2,700.

Infrasource appealed to the Board. The case was heard by an industrial appeals judge (IAJ). At the hearing, various witnesses testified. Before the incident, Mersman had worked for Infrasource for five years. Mersman testified that while he knew he was required to wear a seatbelt, he had probably operated a backhoe without wearing a

seatbelt before the May 10th incident. Mersman also testified that Bartells, the Kent base superintendent, rarely visited jobsites, maybe once every five months. The Infrasource field safety coordinator, Tom Green, would visit jobsites monthly. These monthly site visits were directed at discovering safety issues. Observation of a worker not wearing a seatbelt on a jobsite would be something the safety coordinator would include in a field safety report. Mersman had never witnessed any field safety coordinator communicating the need to wear seatbelts during their monthly safety checks.

Bartells testified that Infrasource has a 52 weeks of Safety Training program[2] for employees and holds meetings every other week, generally covering two topics per meeting. These meetings occurred in the morning at the Kent base for 20 to 30 minutes, and were usually performed by Bartells or Green. Mersman testified, however, that if an employee missed a meeting, they were not required to make it up. Employees were never disciplined or reprimanded for missing the meetings. Bartells confirmed that no one at Infrasource was in charge of ensuring that a particular crewmember attend the trainings. Infrasource offered evidence that Mersman had attended safety trainings in February 2018 and March 2019 that covered seatbelt use, but Mersman could not recall the specific trainings.

Bryan Sabari, Vice President of Safety Training and Compliance, testified that Infrasource has four steps to its discipline program. The first step is a verbal warning or acknowledgment. The second step includes a verbal and written warning added to the employee's file. The third step escalates to time off without pay. Finally, the fourth step

---

[2] In the record, these meetings are also called "Toolbox Talks." The names are synonymous.

is termination. Infrasource reserves the right to enact any of those steps in any order depending on the violation, circumstances, and employee's history. Sabari testified that Infrasource encourages retraining an employee over discipline.

Sabari testified that safety coordinators conducting random site visits would look for seatbelt use. Sabari could not recall whether Infrasource had ever received a citation related to seatbelt use. While Sabari acknowledged that Infrasource would discipline employees for failure to follow safety policies or procedures, he also testified that Infrasource doesn't share disciplinary actions with employees other than the employee being disciplined.

Fordice testified that when he spoke with Infrasource's safety manager[3] about the incident, they said that seatbelt use had been discussed with Mersman in the past. To Fordice, "that would be all the more reason to keep a foreman on site at a minimum or a safety manager at a minimum on site to make sure that operators are wearing their seatbelts." He also found Infrasource was inconsistent with its disciplinary policy based on reviewing traffic infractions.

The IAJ issued a proposed decision and order affirming the citation. The Board granted Infrasource's petition for review of the proposed decision and order. The Board agreed with the IAJ and affirmed the citation.

Infrasource appealed the Board's decision to the superior court, which determined that the Board's findings and conclusions were supported by substantial evidence, and affirmed.

---

[3] Fordice's inspection worksheet reveals that for his closing conference he spoke to both Larry Rupe and Henrik Nielsen. Rupe testified that it was just himself and Fordice on the call.

Infrasource appeals.

II.

A.

In a WISHA appeal, we directly review the Board's decision based on the record before the agency.  Frank Coluccio Constr. Co. v. Dep't of Lab. & Indus., 181 Wn. App. 25, 35, 329 P.3d 91 (2014).  The Board's findings of fact are conclusive if supported by substantial evidence.  Frank Coluccio Constr., 181 Wn. App. at 35.  Evidence is substantial if it is sufficient in quantity to persuade a fair-minded person of its truth.  Frank Coluccio Constr., 181 Wn. App. at 35.  When determining whether substantial evidence supports the factual findings, we view the evidence and all reasonable inferences that can be drawn from that evidence in favor of the party that prevailed in front of the Board—here, the Department.  Frank Coluccio Constr., 181 Wn. App. at 35.  If there is substantial evidence to support the findings of fact, we then determine whether those findings support the Board's conclusions of law.  Frank Coluccio Constr., 181 Wn. App. at 35.

We do not reweigh the evidence on appeal.  Potelco, Inc. v. Dep't of Lab. & Indus., 7 Wn. App. 2d 236, 243, 433 P.3d 513 (2018).  The possibility of drawing inconsistent conclusions from the evidence does not prevent an administrative agency's findings of fact from being supported by substantial evidence.  Aviation W. Corp. v. Dep't of Lab. and Indus., 138 Wn.2d 413, 429, 980 P.2d 701 (1999).  We do not substitute our own judgment for that of the agency in factual issues unless authorized by the Administrative Procedure Act, ch. 34.05 RCW.  Aviation W., 138 Wn.2d at 429.

B.

Infrasource argues that substantial evidence does not support the Board's determination that Infrasource failed to meet the burden of proving the affirmative defense of unpreventable employee misconduct. Infrasource contends that it effectively enforced its safety program. We disagree.

Under RCW 49.17.120(5), there is an affirmative defense of "unpreventable employee misconduct" that allows an employer to avoid liability upon the following showing:

> (i) A thorough safety program, including work rules, training, and equipment designed to prevent the violation;
>
> (ii) Adequate communication of these rules to employees;
>
> (iii) Steps to discover and correct violations of its safety rules; and
>
> (iv) Effective enforcement of its safety program as written in practice and not just in theory.

To show that a safety program is effective in practice, "the employer must prove that the employee's misconduct was an isolated occurrence and was not foreseeable." Pro-Active Home Builders, Inc. v. Dep't of Lab. & Indus., 7 Wn. App. 2d 10, 20, 465 P.3d 375 (2018) (citing Wash. Cedar & Supply Co., Inc. v. Dep't of Lab. & Indus., 119 Wn. App. 906, 913, 83 P.3d 1012 (2003)).

In BD Roofing, Inc. v. Dep't of Lab. & Indus., the Court of Appeals concluded that an employer must do more than show the existence of a safety program to meet the requirements of RCW 49.17.120(5). 139 Wn. App. 98, 113, 161 P.3d 387 (2007). In BD Roofing, an employer offered testimony that its safety inspectors had the authority to fire employees based on safety concerns

and that there was a general company policy that an employee could face dismissal for failing to follow its safety protocols. 139 Wn. App. at 112. But the court determined that without evidence that showed its inspectors had actually disciplined employees for violating safety rules, the enforcement of its safety program was merely theoretical. BD Roofing, 139 Wn. App. at 113. The court held that merely "showing a good paper program does not demonstrate effectiveness in practice." BD Roofing, 139 Wn. App. at 113 (citing Brock v. L.E. Myers Co., High Voltage Div., 818 F.2d 1270, 1277 (6th Cir. 1987)).

The Board found that Infrasource's enforcement of its safety program was not effective in practice because (1) the evidence does not establish effective employee discipline for violating the safety rules and policies, (2) such violations occurred before May 10, 2019, and (3) no monitoring or enforcement mechanism was in place to discover, prevent, and correct any violation of the safety rules and policies because of the lack of both the site foreperson and the superintendent.

Infrasource argues that its safety program meets the "Exxel standard" citing In re Exxel Pacific, Inc., No. 96 W182, 1998 WL 718040 (Wash. Bd. of Ind. Ins. Appeals July 6, 1998). Infrasource's reliance on Exxel is misplaced. First, Exxel addressed a citation of a general contractor for failure to establish, supervise, and enforce a safe and healthful working environment. 1998 WL 718040, at *2. The Board explicitly said, "[o]ur comparisons to the employee misconduct defense . . . provides us with useful questions to consider in resolving the larger issue of how a general contractor can fulfill its duty to have a

safety program that is effective in practice." 1998 WL 718040, at *10. Second, as the Board noted in this case, in Exxel, the company held weekly safety meetings with daily reminders. 1998 WL 718040, at *12. In contrast, Infrasource conducts meetings of its 52 weeks of Safety Training program every other week and there is no evidence of daily safety briefings.

Finally, Infrasource argues that the Board's decision conflicts with In re Shake Specialists, Inc., No. 99 W0528, 2001 WL 292977 (Wash. Bd. of Indus. Ins. Appeals Jan. 22, 2001). In Shake Specialists, the safety inspector inspected jobsites every day, on a random basis, and kept logs of his site visits. 2001 WL 292977, at *2. Shake Specialists presented the inspection logs that showed the company enforced violations of the rules found during these inspections. 2001 WL 292977, at *2. In addition, the safety inspector could not have inspected the site of the violation because the employees were not scheduled to be at that jobsite, they went to the jobsite at the direction of a superintendent of a builder. 2001 WL 292977, at *2-3.

The evidence shows that Infrasource failed to meet its burden to show its safety program was effective in practice as required for the fourth element of RCW 49.17.120(5). Infrasource presented one weekly violation report which only contained driving related violations but presented no other written violation reports of other safety violations. And Bartells testified that these reports would not contain violations the safety team might identify during safety audits. Infrasource presented no evidence that employees, other than Mersman, received incident follow-ups or written or verbal warnings for safety violations.

Mersman admitted that prior violations had occurred but he never received formal discipline nor had he heard of other employees being disciplined. Finally, Infrasource asserted that its safety coordinators conduct regular, onsite safety audits, but did not present evidence about disciplinary actions taken following these visits and there was no evidence that they occurred more frequently than monthly.

We conclude that substantial evidence supports the Board's determination that Infrasource did not meet the burden of proving the affirmative defense of unpreventable employee misconduct.

We affirm the trial court's order affirming the Board's decision and order.

_Mann, J._

WE CONCUR:

_Bowman, J_        _Smith, A.C.J._